**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STUDENT AID FUNDS, INC., | |
| Plaintiff, | Civil Action No. |
| v. | |
| ARNE DUNCAN, in his official capacity as Secretary of the Department of Education, | |
| and | |
| UNITED STATES DEPARTMENT OF EDUCATION, | |
| Defendants. | |

## COMPLAINT

Plaintiff UNITED STUDENT AID FUNDS, INC., ("USA Funds" or "Plaintiff"), for its Complaint against Defendants ARNE DUNCAN, in his official capacity as the Secretary of Education ("Secretary"), and the DEPARTMENT OF EDUCATION ("the Department," or "Defendant") (collectively with the Secretary for these purposes, the "Department") alleges, by and through its attorneys, on knowledge as to Plaintiff and on information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1.     This is an action under the Administrative Procedure Act, 5 U.S.C. §§ 551-706 ("APA") and the Higher Education Act of 1965, 20 U.S.C. §§ 1070 *et seq*., as amended

("HEA"), challenging a new rule by the Department, purportedly issued under the HEA and its promulgated regulations.

2.      USA Funds is a nonprofit "guaranty agency," which, pursuant to certain loan programs under the HEA, "guarantees" student loans by private lenders.  When borrowers default, USA Funds pays the private lender and assumes the loan, receives reinsurance from the Department for most of the value of the loan, and then proceeds with collection efforts against the defaulted borrower on behalf of the Department.

3.      The HEA provides that guaranty agencies shall assess reasonable collection costs to borrowers who default on their student loans, and that guaranty agencies "may" charge such collection costs to all defaulted borrowers up to certain statutory limits, without exception.

4.      In an amicus brief invited by a panel of the United States Court of Appeals for the Seventh Circuit in a currently pending private damages lawsuit, the Department, in a filing on May 21, 2015, announced a brand new rule, which the Department alleged to apply retroactively, purporting to "interpret" its HEA regulations.  Specifically, the Department stated for the very first time that guaranty agencies "may not" assess collection costs to defaulted borrowers in certain circumstances, namely, when a defaulted borrower enters into a rehabilitation agreement within sixty days of notice of default, and complies with that agreement.  *See* Brief for the United States as Amicus Curiae in Support of Appellant and Reversal, *Bible v. United Student Aid Funds, Inc.*, 14-1806 (7th Cir. May 21, 2015) (the "*Bible* brief").

5.      USA Funds responded in that *Bible* proceeding on June 11, 2015, noting, *inter alia*, that the Department's new rule violated the HEA and its regulations, was impermissibly retroactive, and had never before been announced or communicated to the guaranty agency

community of state and nonprofit agencies, in the form of interpretive "Dear Colleague Letters" issued by the Department or otherwise.

6.      On July 10, 2015, in an obvious response to USA Funds' brief, the Department issued "Dear Colleague Letter Gen-15-14," adopting many of the arguments previously recited in the *Bible* brief and responding to some of the arguments of USA Funds, but going even further in appearing to preclude collection costs for defaulted borrowers who enter into any kind of repayment agreement at all, not just rehabilitation agreements, within sixty days of notice of default.  (Hereinafter, the Department's position as reflected in the *Bible* brief and elaborated on in Dear Colleague Letter Gen-15-14 will be referred to as the "New Rule.")  The government filed Dear Colleague Letter Gen-15-14 in the pending *Bible* proceeding on the very same day it was issued, July 10, 2015.

7.      The New Rule is contrary to the text of the HEA, contrary to the text of 34 C.F.R. § 682.410 and other applicable regulations, constitutes improper legislative rulemaking without required notice and comment procedures, constitutes impermissible retroactive rulemaking, and is unlawful, arbitrary, capricious, and irrational.  The New Rule will significantly harm student loan borrowers by discouraging timely loan rehabilitation, in contravention of congressional intent and sound policy.  USA Funds seeks an order from this Court declaring the Department's New Rule invalid, unenforceable, and contrary to law.

## PARTIES

8.      Plaintiff United Student Aid Funds, Inc. is a nonprofit corporation engaged in the business of guaranteeing and administering student loans, and providing aid and support to college students from all walks of life and particularly among those who otherwise might be unable to attend college.  Throughout its more than 50-year history, USA Funds has served more

than 22 million students and parents with more than $250 billion in guaranteed financial aid for higher education.  It has also provided support for thousands of education and financial institutions nationwide.  It is incorporated in the state of Delaware.  Its principal place of business is in Indianapolis, Indiana.

9.      Defendant Arne Duncan is the Secretary of the Department of Education.  His official address is 400 Maryland Avenue, S.W., Washington, D.C. 20202.  He is being sued in his official capacity.  In that capacity, Secretary Duncan has overall responsibility for the operation and management of the Department.  Secretary Duncan, in his official capacity, is therefore responsible for the Department's promulgation of the challenged regulations and for related acts and omissions alleged herein.

10.     Defendant Department of Education is, and was at all times relevant hereto, an executive agency of the United States Government, 5 U.S.C. §§ 101, 105, subject to the APA, *id.* § 551(1).  The Department, in its current form, was created by the Department of Education Organization Act of 1979, 20 U.S.C. § 3401 et seq., Pub. L. No. 96-88, 93 Stat. 668.  The Department is headquartered at 400 Maryland Avenue, S.W., Washington, D.C. 20202.

## JURISDICTION AND VENUE

11.     This action arises under the HEA, and the APA.  This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331. The Department may be sued in connection with its activities under the HEA pursuant to 20 U.S.C. § 1082.  The Court is authorized to issue the nonmonetary relief sought herein pursuant to 5 U.S.C. §§ 702, 705, and 706.

12.     Venue is proper in this Court under 28 U.S.C. § 1391(e)(l), because this is an action against the United States, an officer of the United States, and an agency of the United States.  Defendant Department of Education resides in this judicial district; Defendant Secretary

Duncan performs his official duties in this judicial district; and a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

13.     This Court can grant declaratory relief under 28 U.S.C. § 2201 (the Declaratory Judgment Act), and 5 U.S.C. §§ 701-706, for violations of, *inter alia*, the APA, 5 U.S.C. § 706, and the HEA, 20 U.S.C. § 1070 *et seq.*

## FACTUAL ALLEGATIONS

**A.     Statutory Framework: The Higher Education Act.**

14.     The Higher Education Act of 1965 was enacted "to assist in making available the benefits of postsecondary education to eligible students," regardless of economic background. 20 U.S.C. § 1070(a).  Among other things, the HEA established the Federal Family Education Loan ("FFEL") Program, administered by the Department of Education.  *See* 20 U.S.C. § 1071.

15.     The purpose of the FFEL Program was to "enable the Secretary--(A) to encourage States and nonprofit private institutions and organizations to establish adequate loan insurance programs for students in eligible institutions … and (D) to guarantee a portion of each loan insured under a program of a State or of a nonprofit private institution or organization which meets the requirements of section 1078(a)(1)(B) of this title." 20 U.S.C. § 1071.

16.     Under the FFELP, banks and other private financial institutions make loans to students for education-related expenses.  If a borrower defaults, a private guaranty agency, like USA Funds, acting in a fiduciary capacity, pays the lender and collects on the defaulted loan. The Department reinsures the guaranty agency for most of the defaulted loan.  34 C.F.R. § 682.100(a).

17.     In 1986, Congress enacted the Higher Education Amendments of 1986, part of which relate to the assessment of collection costs against defaulted borrowers.  20 U.S.C. § 1091a(b) provides:

> "Notwithstanding any provision of State law to the contrary--(1) a borrower who has defaulted on a loan made under this subchapter and part C of subchapter I of chapter 34 of Title 42 *shall be required to pay*, in addition to other charges specified in this subchapter and part C of subchapter I of chapter 34 of Title 42 *reasonable collection costs*. …"

20 U.S.C. § 1091a(b)(1) (emphasis added).  The HEA does not define "reasonable collection costs."

18.     In 1992, the HEA was amended to provide for loan "rehabilitation." Rehabilitation is a pathway toward curing of a defaulted student loan, and provides that if a defaulted borrower requests rehabilitation, and makes certain defined monthly payments, the defaulted loan can then be "rehabilitated" and taken out of default status.  A loan is deemed "rehabilitated" when it is re-sold by the guaranty agency to a private lender, or to the Department.  There is a sound, congressionally-expressed policy in favor of loan rehabilitation to help borrowers get out of default status.

19.     With regard to collection costs and loan Rehabilitation Agreements under the Higher Education Act's default reduction program, the HEA provides that when a guaranty agency has secured all of the required payments and sells the loan to a lender, the guarantor "may, in order to defray collection costs . . . charge to the borrower an amount not to exceed 18.5 percent of the outstanding principal and interest at the time of the loan sale."  20 U.S.C. § 1078-6(a)(1)(D)(i)(II)(aa).  (Effective July 1, 2014, the statute was amended to lower the percentage from 18.5 percent to 16 percent. Pub. L. No. 113-67, § 501(1), 127 Stat. 1187 (Dec. 2, 2013). Congress otherwise left that provision intact.)

20.     The provision of the HEA regarding collection costs for defaulted borrowers who enter into Rehabilitation Agreements at 20 U.S.C. § 1078-6(a)(1)(D)(i)(II)(aa) contains no exceptions, exclusions, or carve-outs.  A guaranty agency "may . . .charge" collection costs to defaulted borrowers, including those who enter into Rehabilitation Agreements, no matter when such agreements are entered.

**B.     The Department's Existing Regulations.**

21.     The HEA grants the Secretary the power to "prescribe such regulations as may be necessary to carry out the purposes of this part, including regulations applicable to third party servicers." 20 U.S.C. § 1082.  The Department has promulgated various regulations under the FFEL Program and HEA.

22.     Prior to its New Rule, the Department had not defined "reasonable collection costs" in a way to mandate any across-the-board prohibition on the imposition of collection costs on any class or sub-class of defaulted borrower.  Instead, the Department promulgated 34 C.F.R. § 682.410, which establishes "Fiscal, administrative, and enforcement requirements."

23.     Among other things, 34 C.F.R. § 682.410 establishes administrative requirements for guaranty agencies, including the requirement that

> Whether or not provided for in the borrower's promissory note and subject to any limitation on the amount of those costs in that note, the guaranty agency *shall* charge a borrower an amount equal to reasonable costs incurred by the agency in collecting a loan on which the agency has paid a default or bankruptcy claim. These costs may include, but are not limited to, all attorney's fees, collection agency charges, and court costs.

34 C.F.R. § 682.410(b)(2) (emphasis added).   Like the statute, Section 682.410(b)(2) does not identify any exceptions, exclusions, or carve-outs to the general rule that collection costs may be charged.

24.     Another regulatory provision, 30 C.F.R. § 682.410(b)(5), concerns "reports to consumer reporting agencies."  In relevant part, the regulation states

> The guaranty agency, after it pays a default claim on a loan but before it reports the default to a consumer reporting agency or assesses collection costs against a borrower, shall, within the timeframe specified in paragraph (b)(6)(ii) of this section, provide the borrower with—… (D) An opportunity to enter into a repayment agreement *on terms satisfactory to the [guaranty] agency*.

34 C.F.R. § 682.410(b)(5)(ii)(D) (emphasis supplied).

25.     Importantly, under this regulation, the terms of repayment agreements sufficient to preclude the imposition of collection costs are within the discretion of the guarantor, as the regulation provides the guaranty agency with discretion in establishing a "satisfactory" repayment agreement with the borrower.

26.     The Department has long acknowledged this "discretion," including in the *Bible* brief itself (at pp. 8, 15), and in a 1997 letter attached to that brief (and described further below).

27.     Section 682.405, entitled "Loan rehabilitation agreement," describes the requirements and functions of those agreements in great detail.  That regulation says not one word about any exemption from collection costs, nor, in particular, the sixty day "exemption" propounded by the Department in its New Rule.

28.     The requirement to participate in the Rehabilitation program is mandatory for guaranty agencies.  By statute, a guaranty agency "shall enter" into an agreement with the Department to provide such a program, 20 U.S.C. § 1078-6(a)(1)(A), and by regulation "must enter" into an agreement with the Department to establish such a program. 34 C.F.R. § 682.405(a)(1).

29.     A guaranty agency therefore has no "discretion" to simply opt out of the Rehabilitation program.

30.     Significantly for present purposes, however, there is no regulatory or other time limit—sixty days, or otherwise—in which Rehabilitation Agreements must be offered to defaulted borrowers.  Indeed, according to Dear Colleague Letter Gen-15-14, the Department itself apparently does not typically offer Rehabilitation Agreements during such periods for those FFEL Program loans in its own portfolio: "[f]ew borrowers in the Department's portfolio enter into repayment within that initial period."

31.     The only reference to "collection costs" in Section 682.405 is to expressly acknowledge their applicability, without exception, to Rehabilitation Agreements: Section 682.405(b)(1)(vi)(B) requires the guarantor to provide notice to the defaulted borrower of "the amount of any collection costs to be added to the unpaid principal of the loan when the loan is sold to an eligible lender, which may not exceed 18.5 percent of the unpaid principal and accrued interest on the loan at the time of the sale."

32.     Other regulatory provisions acknowledge the imposition of collection costs upon defaulted borrowers who enter into Rehabilitation Agreements, without any exceptions.  34 C.F.R. § 682.404(f), for example, provides that funds collected from defaulted borrowers must be applied, "first," to "collection costs."  That provision would make no sense if there were a certain class of defaulted borrowers who were exempt from such collection costs, as the Department contends in the New Rule.

33.     Finally, the Department's regulations allow it to impose fines, and a host of other remedial actions, upon guaranty agencies, for alleged violations of Federal requirements. 34 C.F.R. § 682.413(c)(1).

**C.      Long-standing Industry and Department Practices.**

34.      In reliance on the HEA and its regulations, guaranty agencies have long assessed collection costs against defaulted borrowers who enter into Rehabilitation Agreements.  The Department has been aware of this industry practice, has acquiesced to this practice, and has never, until now, formally announced a contrary purported interpretation of the HEA and its regulations.

35.      The costs incurred by guarantors such as USA Funds with regard to defaulted borrowers who enter into Rehabilitation Agreements, no matter when those agreements are entered, are very real and quite substantial.

36.      Many defaulted borrowers simply cannot be located—significant resources are required to find, and maintain contact with, such borrowers.  Communications and follow-up efforts are extensive.  Verifications, and sometime negotiations, over payment terms are common.  In its Dear Colleague Letter Gen-15-14, the Department recites conclusory, and incorrect, assertions regarding the respective costs, but nothing in the record supports the government's naked allegations.  In fact, costs associated with the administration of the rehabilitation loan program are not significantly affected by whether a particular defaulted borrower enters the program within two months, or two months and one day, or six months, or a year after default.  Nothing in the record could support a finding that a borrower who enters into a rehabilitation agreement two months after default is not "similarly situated" for these purposes to one who enters into a rehabilitation agreement several months, or several years, later.

37.      The Department has, for years and years, conducted comprehensive audits of USA Funds and other guaranty agencies.  *See* 34 C.F.R. § 682.410(b)(1).

38.     During such audits, it is common practice for guaranty agencies to provide detailed spreadsheets with rehabilitated loan information, by individual loan, broken out by principal, interest, and collection charges, with associated dates, payment dates, and amounts. Such detailed data make clear that collection costs are routinely assessed against defaulted borrowers who are making Rehabilitation Agreement payments—even against those who entered into Rehabilitation Agreements within 60 days after a default claim is paid.

39.     Moreover, guaranty agencies routinely supply to the Department documentation of policies and internal audit procedures, which also make clear the practice of assessing collection costs upon defaulted borrowers who are in Rehabilitation Agreement status.  The Department has never made any finding, nor taken any exception to, such practices.

40.     For example, the Department's 2014 and 2012 audits of USA Funds' rehabilitation loan program and collection cost assessment practices involved production of account samples for borrowers who entered into Rehabilitation Agreements within the first sixty days after default, and were charged collection costs.  The Department made no findings of discrepancies with regard to such accounts or charges.

41.     The only plausible explanation for the Department's inaction is that the New Rule was not known to the Department's auditors, because it did not exist.

42.     The Department's own regulatory and compliance guidance confirms the discretion on the part of guaranty agencies that the New Rule would impermissibly and precipitously abolish.  For example, a government-mandated compliance supplement audit guide from June 2015, referred to as the "A-133," states, at page 4-84.032-G-16, that "A guaranty agency may choose not to charge collection costs to a borrower who enters into a voluntary repayment agreement with the guaranty agency during the 60-day period after notice from the

guaranty agency . . . ."  That guidance flatly contradicts the New Rule, which categorically states that "the rules <u>bar</u> a guaranty agency" from charging such collection costs.  Dear Colleague Letter Gen-15-14, at 1.

43.    At least until very recently, the Department's own website guidance for defaulted borrowers was also consistent with this long-standing industry practice, and inconsistent with the New Rule.  That web site stated that: "Another option for getting your loan out of default is loan rehabilitation. To rehabilitate your Direct Loan or FFEL Program loan, you and ED must agree on a reasonable and affordable payment plan. (Remember, contact your school for your Perkins Loan.) Your loan is rehabilitated only after you have voluntarily made the agreed-upon payments on time and the loan has been purchased by a lender. *Outstanding collection costs may be added to the principal balance*."  Federal Student Aid, Office of the U.S. Department of Education, "Don't get discouraged if you are in default on your federal student loan" *available at* https://studentaid.ed.gov/sa/repay-loans/default/get-out (last accessed July 8, 2015) (emphasis added).

44.    The Department's website was therefore inconsistent with the New Rule.  The Department did not tell defaulted borrowers that collection costs cannot be imposed if defaulted borrowers entered into a rehabilitation agreement within the first 60 days after notice of default. Rather, the Department warned defaulted borrowers that collection costs "*may be added,*" without exception.

45.    USA Funds and other guaranty agencies have reasonably relied on the Department's lack of enforcement, lack of guidance letters, and its public statements such as those on its website when interpreting their rights and obligations under the HEA and its regulations.

**D.      The Department's New Rule.**

46.     On July 29, 2013, a defaulted borrower, Bryanna Bible, filed a Complaint in the

United States District Court for the Southern District of Indiana.  *Bible v. USA Funds, Inc.*, No.

1:13-CV-00575-TWP (S.D. Ind. Apr. 8, 2013).   In her Complaint, Bible alleged breach of

contract and RICO claims against USA Funds on her own behalf and on behalf of "all persons

who entered into a loan agreement that is silent on or allows collection costs only to the extent

allowed under the Higher Education Act, . . . and who subsequently entered into an

agreement . . . , and, on whom Defendant subsequently imposed collection costs at any time from

six years prior to the filing of this Complaint." *Id.* at 8-9.

47.     The Department is not a party to the *Bible* proceedings.

48.     On March 14, 2014, District Court Judge Tanya Walton Pratt granted USA

Funds' Motion to Dismiss, finding in part, that HEA regulations explicitly allow guarantors to

assess collection charges to defaulting borrowers who enter into Rehabilitation Agreements.

*Bible v. United Student Aid Funds, Inc.*, No. 1:13-CV-00575-TWP, 2014 WL 1048807, at *9

(S.D. Ind. Mar. 14, 2014).  The court found that "The imposition of collection costs is clearly

and explicitly authorized - and mandated - by the HEA regulations… [and] the HEA regulations

acknowledge that collection costs will be imposed on borrowers during [the] rehabilitation

program, and USA Funds did not act contrary to the HEA in doing so." *Id.*

49.     On appeal, the United States Court of Appeals for the Seventh Circuit invited the

Department to file an amicus curiae brief addressing "whether and under what circumstances the

Higher Education Act, as amended, and its regulations allow a guaranty agency participating in

the Federal Family Education Loan Program to assess collection costs against a first-time

defaulted borrower who (1) timely enters into a rehabilitation agreement with the guarantor upon

receiving notice that the guarantor has paid a default claim and (2) complies with that agreement." *Bible v. USA Funds, Inc.*, 14-1806 (7th Cir. Jan. 28, 2015)**.**

50.     The Department filed the *Bible* brief on May 21, 2015.  In the *Bible* brief, after noting that "[t]he United States . . . has a significant interest in the proper construction of the Higher Education Act and the Secretary's implementing regulations," *id.* at 1, the Department stated for the very first time ever that "[t]he Department interprets its regulations to provide an exception with regard to collection costs charged when a borrower promptly enters into a loan repayment agreement after the borrower has been notified by the guarantor that it has paid a default claim." *Id.* at 8, 12.

51.     As the basis for its New Rule, the Department relied on "the requirement in 34 C.F.R. § 682.410(b)(2) that a guaranty agency assess collection costs to be subject to the conditions in paragraph (b)(5), which require a guaranty agency to perform certain tasks 'after it pays a default claim on a loan but before it reports the default to a consumer reporting agency or assesses collection costs against a borrower.'"  *Id.* at 13-14.

52.     In the *Bible* brief (and in Dear Colleague Letter Gen-15-14), the Department relied on two letters from the 1990's as purported evidence that the New Rule was a part of the Department's existing policy.  Neither letter, however, supports or advances the radical departure reflected by the New Rule.

53.     The first letter, a March 14, 1994 letter to "Guaranty Agency Directors," merely discussed the collection costs being assessed against defaulted borrowers in response to the 1992 Amendments to the Higher Education Act, and was all about the *amounts* of such costs that would be deemed "reasonable."  The Department concluded that "the amount of collection costs that will be considered 'reasonable' under these circumstances to be an amount that does not

exceed 18.5 percent of the outstanding amount of principal and accrued interest on the loan."
*Bible b*rief, SA 3.   That letter says not one word about prohibiting the imposition of collection
costs to any subset of defaulted borrowers who enter Rehabilitation Agreements.   Indeed, the
only logical inference from the correspondence is that such charges, up to 18.5 percent, would be
allowed.   The letter therefore undercuts, rather than supports, the New Rule.

54.      Similarly, the second letter, correspondence dated June 28, 1997 to the Texas
Guaranteed Student Loan Corporation ("TGSLC"), fails to support the New Rule.   That private
letter (which had never previously been disclosed to USA Funds or otherwise made public, as far
as USA Funds is aware) was a response to TGSLC's query about whether it was allowed to
forego assessing collection costs against "defaulted FFELP borrowers who enter into *satisfactory
repayment* … during the 60-day period following claim payment of a defaulted FFEL loan." *Id.*
at SA 1.   The Department responded that "the agency is not required to assess borrower
collection costs."   "Not required," however, is not the same thing as "not allowed."   Indeed, the
discretion of a guaranty agency to forego collection costs upon entry of repayment agreements
"satisfactory to the [guaranty] agency" has never been disputed.

55.      Significantly, the 1997 letter makes no mention whatsoever of Rehabilitation
Agreements, nor is there any reason to conclude that the circumstances addressed by the letter
involved such agreements.   Correctly read, all that the letter does is confirm the "discretion"
inherent to the "satisfactory to the agency" language of 34 C.F.R. § 682.410(b)(5)(ii)(D).   That
"discretion" is conspicuously lacking with respect to the terms of Rehabilitation Agreements,
and the letter therefore actually undercuts, rather than supports, the Department's New Rule.

56.      On June 11, 2015, USA Funds filed a response to the *Bible* brief in the United
States Court of Appeals for the Seventh Circuit ("USA Funds' *Bible* response").   In USA Funds'

*Bible* response, USA Funds explained, *inter alia*, that the Department had "stitched together a purported 'interpretation,' never before announced, for which there is no prior enforcement, no industry fact-finding, no statement of reasons, no prior notice or opportunity to comment, no contemporaneous articulation of impact, effect, or policy, no existing policy or purpose statement—indeed, nothing to suggest that the government's position is anything other than after-the-fact wishful thinking by the Department of Education about what it (now, apparently) would prefer that the regulations say, when they do not.  Not only is the government's currently-asserted position not supported by what the regulations actually say, that 'interpretation' introduces irreconcilable inconsistencies in the actual language of the regulations, and violates the letter and spirit of the statute." *Id.* at 1-2.

57.     USA Funds further explained in its *Bible* response that: (i) Rehabilitation Agreements are not the sort of discretionary "repayment agreement on terms satisfactory to the [guaranty] agency" sufficient to preclude the imposition of collection costs, *id.* at 6-11; (ii) that the "sixty day" period imposed by the New Rule appears nowhere in any existing regulation, and that the Department had mischaracterized the actual timing provision in the regulations in its zeal to support the New Rule, *id.* at 11-13; (iii) that the New Rule was based upon impermissibly reading an exception into the statute (20 U.S.C. § 1078-6(a)(1)(D)(i)(II)(aa)) that Congress did not provide, *id.* at 14-15; and (iv) that the Department's position in the correspondence described above, and in a prior proceeding (*Educational Credit Management Corporation v. Barnes*, 318 B.R. 482 (S.D. Ind. 2004), *aff'd, Black v. Education Credit Mgmt. Corp,*, 459 F.3d 796 (7th Cir. 2006)) did not support the Department or the New Rule.

58.     USA Funds emphasized that "the Department of Education has never, ever taken the position that collection costs are prohibited when a defaulted borrower enters into a

Rehabilitation Agreement within sixty days of receiving notice of default, upon the basis that

such costs would be 'unreasonable' or for any other reason."  USA Funds' *Bible* response at 15-

16.

59.     USA Funds further stated in its *Bible* response that "The Department of Education

has never publicly issued a 'Dear Colleague Letter,' which is its customary method of clarifying

regulatory obligations, to guarantors stating [its] position."  *Id.* at 16.

60.     On July 10, 2015, the Department, belatedly and in an obvious response to USA

Funds, issued Dear Colleague Letter Gen-15-14, purporting to "restate and clarify" the position it

had staked out for the first time in the *Bible* brief.

61.     Upon information and belief, which USA Funds expects to confirm and prove

during discovery, the Department issued Dear Colleague Letter Gen-15-14 in response to USA

Funds' position in the *Bible* litigation.

62.     Dear Colleague Letter Gen-15-14 does not "restate and clarify" anything.  It

includes, and elaborates on, many of the very same arguments made by the Department for the

very first time in the *Bible* brief.  Indeed, it appears to go even further, by not limiting the new

prohibition to Rehabilitation Agreements, but suggesting that any repayment agreement at all

entered into within sixty days of notice of default—whether "on terms satisfactory to the

[guaranty] agency" or not—would preclude the imposition of collection costs.

**E.     The Department's New Rule is inconsistent with the HEA.**

63.     With its New Rule, the Department impermissibly re-writes the HEA, and reads

into that statute a mandatory exception that is not there.  The HEA provides that when a guaranty

agency has secured all of the required payments and sells a rehabilitated loan to a lender, the

guarantor "may, in order to defray collection costs . . . charge to the borrower an amount not to

exceed 18.5 percent [now 16 percent] of the outstanding principal and interest at the time of the loan sale." 20 U.S.C. § 1078-6(a)(1)(D)(i)(II)(aa).

64.     The provision of the HEA regarding collection costs for defaulted borrowers who enter into Rehabilitation Agreements at 20 U.S.C. § 1078-6(a)(1)(D)(i)(II)(aa) contains no exceptions, exclusions, or carve-outs.  A guaranty agency "may . . .charge" collection costs to defaulted borrowers, including those who enter into Rehabilitation Agreements, no matter when such agreements are entered.

65.     In its New Rule, the Department purports to instruct guaranty agencies that they "may not charge" collection costs to a certain class of defaulted borrowers—i.e., those borrowers who "promptly after default enters into a repayment agreement, in particular a rehabilitation agreement, with that [guaranty] agency, and who honors that agreement."  The statute provides for no such exception, nor has that the purported exception ever been defined or described in any regulation, guidance, or other formal or informal statement by the Department, prior to the filing of the *Bible* brief.

66.     In addition, the Department's New Rule rewrites the HEA by creating, for the first time, an exception to 20 U.S.C. § 1091a(b)'s requirement that defaulted borrowers "shall be required" to pay "reasonable collection costs."  Under its New Rule, borrowers in default are now not required to pay reasonable collection costs, if they "promptly after default enter into a repayment agreement." Dear Colleague Letter Gen-15-14, at p. 1.  The Department's New Rule rewrites the statute so that the word "reasonable" now purports to modify "shall be required," rather than "collection costs."

**F.      The Department's New Rule is inconsistent with existing HEA Regulations.**

67.      The Department's New Rule is also inconsistent with the existing HEA

regulations.  The text of 34 C.F.R. § 682.410(b)(2), expressly allows the imposition of formula-

based collection costs on defaulted borrowers, without exception.  The text of the regulation

states that "the guaranty agency *shall* charge a borrower an amount equal to reasonable costs

incurred by the agency in collecting a loan on which the agency has paid a default or bankruptcy

claim…" *Id*.  Nowhere is an exception contemplated.  The new and drastic change of position

reflected by the New Rule is not fairly encompassed by the existing regulation.  Instead, the New

Rule is a repudiation of the mandatory assessment element of 34 C.F.R. § 682.410(b)(2).

68.      An agency is not free to disregard its regulations at will.  An agency issuing a

legislative rule is bound by the rule until that rule is amended or revoked.  The creation of

exceptions by the New Rule constitutes an effective amendment to 34 C.F.R. § 682.410(b)(2).

The New Rule changes existing law, and the known and disclosed existing practices of guaranty

agencies, without providing adequate notice or the opportunity to comment.

69.      The error of the Department's post hoc "interpretation" is further confirmed by

its mischaracterization of the time limit provisions in the regulations.  Because collection costs

are so clearly allowed for Rehabilitation Agreements, *e.g.*, 20 U.S.C. § 1078-

6(a)(1)(D)(i)(II)(aa), the Department must, necessarily, constrain its position to argue that

collection costs are only prohibited for some argued (albeit unstated) excepted subset of such

agreements.  It does so in the New Rule by urging that collection costs are only prohibited where

a defaulted borrower "promptly after default enters into a repayment agreement, in particular a

rehabilitation agreement, with that [guaranty] agency, and who honors the agreement."  Dear

Colleague Letter Gen-15-14. (emphasis supplied).  The government then arbitrarily assigns "sixty days" as the period for such "promptness."

70.     That is not what the regulations say.  There are two actual time limits in the regulations invoked by the Department.  First, there is 45 days, which is the period during which a notice letter describing the procedural rights identified in Section 682.410(b)(5) must be sent, from the payment of the default claim by the guarantee agency to the original lender.  That period is stated in 34 C.F.R. § 682.410(b)(6)(ii), which is incorporated by reference by Section 682.410(b)(5)(ii).

71.     Second, there is a sixty day period relating to administrative review: Section 682.410(b)(5)(iv)(B) requires a guaranty agency to provide sixty days to a borrower to request administrative review, from receipt of the required notice that such review is available.

72.     Significantly, however, that is all that that regulation says—it makes no reference whatsoever to collection costs, Rehabilitation Agreements, or anything else of relevance to the present issues.  The mythical "60-day" period is simply inapposite to the matters before the Court in the *Bible* case, and to the new position staked out in the Department's *Bible* brief and Dear Colleague Letter Gen-15-14.

73.     The government blatantly misstates what the regulation says when it contends that "the guaranty agency must give the borrower at least 60 days to take any of several actions, including entering into a repayment agreement with the guaranty agency."  Dear Colleague Letter Gen-15-14, at 1.  The regulations do not say that.

74.     As noted, the "sixty days" only applies to a borrower's required time period "for requesting administrative review under paragraph (b)(5)(ii)(C) of this section."  34 C.F.R. § 682.410(b)(5)(iv)(B) (emphasis supplied).  *Not*, as the government incorrectly contends, to the

other "actions" described at Section 682.410(b)(5)(ii), nor, more to the point, to the opportunity to "enter into a repayment agreement on terms satisfactory to the agency" under Section 682.410(b)(5)(ii)(D).  The government has misstated the regulations in its zeal to conform them to its after-the-fact construct.

75.     The government's regulatory mischaracterizations regarding "promptness" are significant.  The utter silence of the regulations with regard to such a key aspect of the government's construct underscores the contrived nature of that purported "interpretation." Without a clear definition of "timely" or "promptly," the government has retroactively imposed an unknowable scheme.  The government, in its New Rule, has picked a number out of the air—sixty days, because that is a time period from another subsection of the regulations that applies to other actions for other purposes.  That, however, is creating *de facto* a new regulation, not "restating and clarifying."  It provides nothing like the "fair warning" that is required.

76.     The Department also impermissibly reads the "on terms satisfactory to the [guaranty] agency" language completely out of 34 C.F.R. § 682.410(b)(5)(ii)(D).

77.     Pursuant to the Department's New Rule, decades of discretion by guaranty agencies, expressly contemplated by the "satisfactory to the [guaranty] agency" text of the regulation, would be precipitously wiped away, in one fell swoop.

78.     Under the Department's New Rule, a guaranty agency, now, "must accept as satisfactory to the agency" non-discretionary Rehabilitation Agreements, and, indeed, maybe even any offered "repayment" agreement at all, no matter how attenuated to the ultimate curing of the default such an agreement might be.  Dear Colleague Letter Gen-15-14, at 5.

**G.      The Department's New Rule is a new legislative rule.**

79.      The Department's New Rule, although styled as a purported interpretation or "clarification," is a *de facto* new substantive and legislative rule, for which required notice-and-comment procedures under the APA were not followed.

80.      The New Rule has drastically changed the rules of the game for USA Funds and other guaranty agencies.  Since the enactment of 20 U.S.C. § 1091a(b)(1), USA Funds has assessed collection costs against defaulted borrowers, unless the borrowers were able to satisfy their obligations on terms satisfactory to the guaranty agency.  The New Rule changes the entire student loan regime by creating, for the first time, a broad and mandatory exception to the assessment of collection costs.

81.      In its New Rule, the Department is not "interpreting," or "clarifying," 34 C.F.R. § 682.410, but, rather, has created an entirely new substantive rule and regulation.  The HEA grants the Department power to promulgate reasonable regulations, but such regulations must be issued in compliance with the HEA and APA.

82.      As such, the Department was required to go through the traditional notice and comment rulemaking before issuing the New Rule, under 5 U.S.C § 553.  It did not do so.

**H.      The Department's New Rule was ill-considered and arbitrary, and will ultimately harm borrowers.**

83.      The Department did not consider relevant factors when issuing its New Rule.  As such, the Department's New Rule is invalid.

84.      Upon information and belief, which USA Funds expects to confirm and prove through the discovery to which it is entitled, in connection with its announcement of the New Rule the Department: (i) did not conduct any studies of impacts of the New Rule upon rehabilitation programs or availability of rehabilitation agreements; (ii) did not assess amounts or

relative impacts of the New Rule's prohibition of collection costs upon guaranty agencies; (iii) did not assess actual collection efforts or costs incurred with respect to borrowers who enter into rehabilitation agreements with sixty days versus after sixty days after notice of default; (iv) did not solicit the views of interested parties or constituencies; and (v) did not attempt to assess or reconcile prior contrary industry and Department practices.

85.     Upon information and belief, which USA Funds expects to confirm and prove through the discovery to which it is entitled, in connection with the New Rule the Department: (i) relied on factors which Congress did not intend it to consider; (ii) entirely failed to consider important aspects of the problems and issues; (iii) offered post hoc explanations for its position that run counter to the evidence that was or should have been before the Department; (iv) failed to consider or provide appropriate notice; and (v) engaged in a flawed process, which led to a result that is so implausible that it cannot have been the product of a difference in view or the product of agency expertise.

86.     To the extent that the Department's New Rule would be justified by a purported desire on the part of the Department to foster rehabilitation for the benefit of defaulted borrowers, that position cannot be justified upon such grounds, because it will likely have the opposite effect.

87.     USA Funds and other guaranty agencies will suffer severe economic harm if they are not allowed to charge collection costs on certain classes of Rehabilitation Agreements. Under the New Rule, there are powerful economic incentives for guaranty agencies such as USA Funds to discontinue efforts to promote Rehabilitation Agreements within sixty days of notice of default.

88.     Accordingly, defaulted borrowers who might otherwise be made aware of the rehabilitation option will likely not have as much access to such information under the Department's New Rule, to the detriment of such defaulted borrowers and in contravention of congressional intent and sound policy.

**I.      The Department's New Rule is impermissibly retroactive.**

89.     As described above, neither USA Funds nor any other guaranty agency had any prior notice of the substance of the New Rule prior to the filing of the *Bible* brief, and then the issuance of Dear Colleague Letter Gen-15-14.

90.     The New Rule was flatly inconsistent with long-standing practices in the industry, which were well-known (or certainly knowable) to the Department.

91.     The New Rule, by incorrectly and inaccurately purporting to be a "restat[ment] and clarif[ication]" of existing rules, purports to impose new substantive rules retroactively, without notice, due process, nor fair or adequate warning to USA Funds.

92.     The purported retroactive impact of the New Rule could potentially result in substantial financial exposure and harm to USA Funds and other guarantors.

**J.      The Department's New Rule is not entitled to deference**.

93.     Interpretations that are plainly erroneous or inconsistent with the statute and/or regulation are not afforded any deference.  Deference is similarly unavailable when the purported "interpretation" was really undertaken to create *de facto* a new regulation.

94.     Deference is not appropriate when there is reason to suspect that the interpretation does not reflect the agency's fair and considered judgment on the matter.  There was no fair and considered judgment by the Department with regard to the New Rule.

95.     As described above, the Department's New Rule is contrary to the text of both the HEA and the regulations, including 34 C.F.R. § 682.410.

96.     As described above, the Department's New Rule is a *de facto* new regulation, which constitutes a radical break from both the text of the statute and regulations, and the practice of both guaranty agencies and of the Department.

97.     The Department's New Rule is the product of, and constitutes, final agency action for purposes of judicial review by this Court.

## COUNT 1
## (VIOLATION OF THE HIGHER EDUCATION ACT)

98.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

99.     The HEA provides that a guaranty agency "may, in order to defray collection costs . . . charge to the borrower an amount not to exceed 18.5 percent [now 16 percent] of the outstanding principal and interest at the time of the loan sale." 20 U.S.C. § 1078-6(a)(1)(D)(i)(II)(aa).   The provision of the HEA contains no exceptions, exclusions, or carve-outs.  A guaranty agency "may . . .charge" collection costs to defaulted borrowers, including those who enter into Rehabilitation Agreements, no matter when such agreements are entered.

100.    In its New Rule, the Department purports to instruct guaranty agencies that they "may not charge" collection costs to a certain class of defaulted borrowers, in violation of the HEA.

101.    By its text, the HEA requires that borrowers who have defaulted on a loan "shall be required to pay reasonable collection costs. …" 20 U.S.C. § 1091a(b)(1).

102.    In its New Rule, the Department has misconstrued the HEA by applying "reasonable" to "shall be required to pay," rather than the "collection costs" dictated by the statute.

103.    USA Funds is adversely affected and aggrieved by the New Rule, and will suffer legal wrong because of the impermissible agency action.

104.    The New Rule is in violation of, and not authorized by, the Higher Education Act of 1965, 20 U.S.C. § 1070(a) et seq.

105.    Because it is inconsistent with the HEA, the New Rule exceeds the Department's statutory jurisdiction and authority.

106.    Accordingly, the New Rule exceeds statutory authority, jurisdiction, and limitations, in violation of 5 U.S.C. § 706(2)(C), and is not in accordance with law, in violation of 5 U.S.C. § 706(2)(A).  As such, the New Rule is arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, and issued without observance of the procedures required by law.

107.    Plaintiff has no adequate administrative remedy for the Department's unlawful action as described herein.

## COUNT 2
## (VIOLATION OF EXISTING REGULATIONS)

108.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

109.    By its text, 34 C.F.R. § 682.410(b)(2) requires that a guaranty agency assess reasonable collection costs "equal to reasonable costs incurred by the agency in collecting a loan on which the agency has paid a default or bankruptcy claim."

110.    The Department's New Rule is in conflict with the text of 34 C.F.R. §§ 682.410(b)(2).

111.    As described further above, the Department's New Rule impermissibly reads the "on terms satisfactory to the [guaranty] agency" language completely out of 34 C.F.R. § 682.410(b)(5)(ii)(D).

112.    The Department's New Rule impermissibly creates a new, previously unannounced "60 day" deadline out of whole cloth and contrary to the actual text of the existing regulations, during which collection costs may not be charged to defaulted borrowers who enter into Rehabilitation Agreements, or, potentially, other repayment agreements, during that period.

113.    Accordingly, for all of the reasons described above, the New Rule is arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, and issued without observance of the procedures required by law.

114.    Plaintiff has no adequate administrative remedy for the Department's unlawful action as described herein.

## COUNT 3
### (FAILURE TO FOLLOW NOTICE AND COMMENT RULEMAKING)

115.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

116.    The Department's New Rule is in such conflict with the text of 34 C.F.R. §§ 682.410, 682.405, and other statutory and regulatory provisions that it constitutes a brand new substantive regulation.

117.    The Department's New Rule is a substantive rule that will affect USA Funds' legal rights or obligations and result in legal consequences.

118.    When the notice and comment rulemaking requirement applies, the agency must publish notice in the Federal Register, including information as to the time, place, and nature of the proceedings; reference to the appropriate legal authority and the substance of the proposed rule or a description of the subjects and issues involved.  The agency must also give interested persons an opportunity to participate in the rulemaking through submission of written data, views, or arguments.   Only once these requirements are satisfied can an agency promulgate a new rule or regulation.

119.    The Department failed to follow any of these required procedures with respect to the New Rule.  Specifically and without limitation, the Department failed to: (a) publish its New Rule; (b) refer to the appropriate legal authority and the substance of the proposed rule or a description of the subjects and issues involved; and (c) give interested persons an opportunity to participate in the rulemaking through submission of written data, views, or arguments.

120.    Accordingly, Defendants have violated 5 U.S.C. § 553.

121.    Plaintiff has no adequate administrative remedy for the Department's unlawful action as described herein.

## COUNT 4
## (ARBITRARY AND CAPRICIOUS AGENCY ACTION)

122.    Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

123.    The Department's New Rule conflicts with existing Department regulations, and the HEA.

124.    Upon information and belief, which USA Funds expects to confirm and prove during the discovery to which it is entitled in this proceeding, the Department did not consider: (i) its longstanding history of not citing guaranty agencies for assessing collection costs to borrowers who enter Rehabilitation Agreements within 60 days; (ii) the financial impact of the New Rule on USA Funds and similarly situated guaranty agencies; (iii) the financial and educational impact on borrowers of the New Rule; nor (iv) any of the other relevant considerations or evidence that might have led to rational or permissible rulemaking.

125.    Therefore, the New Rule is unsupported by the facts and record before the Department.

126.    Accordingly, the Department has violated 5 U.S.C. § 706 with the New Rule.

127.     Plaintiff has no adequate administrative remedy for the Department's unlawful action as described herein.

## COUNT 5
### (IMPERMISSIBLE RETROACTIVE RULEMAKING)

128.     Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

129.     The Department's New Rule purports to have retroactive effect on USA Funds' past assessment of collection costs.

130.     In light of the statutory and regulatory texts, and the Department's previous acquiescence in USA Funds' assessment of collection costs, the New Rule was unforeseeable.

131.     USA Funds had no adequate or fair warning, and was not afforded any sufficient due process or other rights, in connection with the purported retroactive determination that practices that were previously and apparently allowed would be deemed by the Department, after the fact, to be unallowed.

132.     The Department's New Rule constitutes retroactive rulemaking.  Such retroactive rulemaking power was not expressly conveyed by Congress in the HEA.

133.     The New Rule is therefore arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

134.     Accordingly, the Department has violated 5 U.S.C. § 706.

135.     Plaintiff has no adequate administrative remedy for the Department's unlawful action as described herein.

**PRAYER FOR RELIEF**

Plaintiffs pray that this Court:

1.      Declare the Department's New Rule invalid, unenforceable and contrary to law.

2.      Award Plaintiff its costs and reasonable attorney's fees as appropriate.

3.      Grant such further and other relief as this Court deems just and proper.


Dated: July 16, 2015                    MORGAN, LEWIS & BOCKIUS LLP


                                        By: _____/s Brad Fagg_____
                                            Brad Fagg (D.C. Bar No. 433645)
                                            bfagg@morganlewis.com

                                        1111 Pennsylvania Avenue, NW
                                        Washington, DC  20004
                                        Telephone:       +1.202.739.3000
                                        Facsimile:       +1.202.739.3001