# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **United Student Aid Funds, Inc.,** | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil No. 15-cv-01137 (APM) |
| **John B. King, Jr.,**<br>    Secretary of the U.S. Department of<br>    Education, *et al.*, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

On July 10, 2015, the United States Department of Education issued a "Dear Colleague Letter" addressing when a "guaranty agency" may assess "collection costs" to a defaulting borrower. Guaranty agencies are private entities that purchase defaulted student loans from primary lenders and then attempt to bring the borrowers back into compliance, an industry practice known as loan rehabilitation. Collection costs, as the term implies, are costs incurred by the guaranty agency in attempting to collect on a defaulted student loan. The Dear Colleague Letter established that guaranty agencies cannot charge a defaulting borrower with collection costs if, within 60-days of being notified of loan rehabilitation alternatives, the borrower enters into a repayment agreement and then complies with all its terms. The Department explained in the Dear Colleague Letter that its regulations, issued pursuant to the Higher Education Act of 1965, prohibit the imposition of collection costs in such circumstances.

Plaintiff United Student Aid Funds, Inc., is a guaranty agency. It challenges the Department's conclusion in the Dear Colleague Letter in two general respects. First, it argues that

the announced prohibition on assessing collection costs conflicts with both the Higher Education Act and its implementing regulations. Second, it contends that the manner in which the Department issued the Dear Colleague Letter violated certain procedural requirements imposed by the Administrative Procedure Act.

A common issue rests at the heart of both of these challenges: Did the Dear Colleague Letter announce a "new rule"? Or, more precisely, did the Department switch from allowing guaranty agencies to assess collection costs to barring that very practice? Two important legal consequences flow from the answers to those questions. If the Dear Colleague Letter is a new rule, the Administrate Procedure Act requires the Department to have acknowledged its changed position and to have provided a good reason for the change. If the Department failed to abide by those procedural requirements, this court would owe no deference to the agency's interpretation of its own regulations. On the other hand, if the Dear Colleague Letter did not announce a new rule, then the agency's interpretation of its own regulations would be entitled to deference.

Unlike most Administrative Procedure Act cases, this matter comes to the court on a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). As a result, also unlike most Administrative Procedure Act cases, the court does not have the benefit of an administrative record that evidences the agency's decision-making process. It has only the Dear Colleague Letter itself and the parties' legal arguments.

A second consequence of the case's present posture is the lens through which the court must view Plaintiff's Complaint. The court must accept Plaintiff's factual allegations as true and grant Plaintiff the benefit of all inferences that can be derived from those allegations. Here, Plaintiff has alleged that prior to the Department's issuance of the Dear Colleague Letter, the Department had not interpreted the Higher Education Act to prohibit charging collection costs to

any class of defaulted borrowers; that guaranty agencies had long assessed such costs to defaulted borrowers who entered into repayment agreements; and that the Department had been aware of and acquiesced in this industry practice, as evidenced by the lack of enforcement actions or contrary guidance.

Accepting those allegations as true and granting Plaintiff the benefit of all inferences derived therefrom, the court concludes that Plaintiff has sufficiently pleaded that the Dear Colleague Letter created a new rule.  As a consequence, the court finds that Plaintiff has plausibly asserted a claim that the Department did not procedurally comply with the APA in issuing the Dear Colleague Letter.  The Dear Colleague Letter neither acknowledges that it announced a new rule nor does it explain why the Department deviated from its past position.  That lack of procedural compliance, if proven true, also would mean that the court would owe no deference to the Department's interpretation of its own regulations.

In the end, however, the merits of this case cannot be resolved on a motion to dismiss. Instead, the court first must resolve the *factual* question of whether the Dear Colleague Letter announced a new rule.  That factual question can be resolved only on a motion for summary judgment, after the parties have presented the administrative record and any additional facts. Accordingly, as further explained below, the court denies Defendants' Motion to Dismiss in its entirety.

∗ ∗ ∗

The Higher Education Act of 1965, 20 U.S.C. § 1001 *et seq.* (the "Act"), governs federally funded student loan programs.  The Act includes the Federal Family Education Loan Program ("FFELP"), 20 U.S.C. §§ 1071 to 1087-4, which "encourages private lenders to make student loans by providing that the Secretary of Education pay part of the student's interest and costs and by

guaranteeing loan repayment." *Educ. Credit Mgmt. Corp. v. D.C.*, 471 F. Supp. 2d 116, 116 (D.D.C. 2007) (citing 20 U.S.C. § 1078(a) & (c)).  Pursuant to FFELP, private lenders make loans to students, while "guaranty agencies" guarantee the loans, paying the lender the outstanding balance and taking control of the loan if the student defaults. *See* 20 U.S.C. § 1078(c).  The Secretary of Education, in turn, "reinsures" the loans by reimbursing guaranty agencies for their "losses (resulting from the default of the student borrower) on the unpaid balance of the principal and accrued interest of any insured loan." *Id.* § 1078(c)(1)(A). *See also Armstrong v. Accrediting Council for Continuing Educ. & Training, Inc.*, 168 F.3d 1362, 1364 (D.C. Cir. 1999), *opinion amended on denial of reh'g*, 177 F.3d 1036 (D.C. Cir. 1999) (describing FFELP's regulatory framework).

FFELP and its implementing regulations set forth a complex structure that governs numerous distinct relationships, transactions, and circumstances that arise in the universe of student loans.  This case, however, focuses on one narrow piece of that universe—the relationship and transactions between defaulted borrowers and guaranty agencies—and on one particular circumstance—when a defaulted borrower enters into a "rehabilitation agreement" with a guaranty agency promptly after default, and proceeds to comply with that agreement.  Narrower still, it raises only one discrete question about that circumstance:  Can a guaranty agency impose collection costs on the aforementioned sub-class of defaulted borrowers? *See* Compl., ECF No. 1, at ¶¶ 4, 7 ("[T]he Department stated for the very first time that guaranty agencies 'may not' assess collection costs to defaulted borrowers in certain circumstances, namely, when a defaulted borrower enters into a rehabilitation agreement within sixty days of notice of default, and complies with that agreement. . . . USA Funds seeks an order from this Court declaring th[at new rule] invalid, unenforceable, and contrary to law.");  Defs.' Mot. to Dismiss, ECF No. 6 [hereinafter

4

Defs.' Mot.], at 1 ("Plaintiff . . . challenges the Department[']s . . . interpretation of its own regulations governing when a guaranty agency may charge collection costs to a student loan borrower who enters into a repayment agreement promptly after defaulting on a loan.").

The Court of Appeals for the Seventh Circuit recently addressed that precise question in a case brought against Plaintiff United Student Aid Funds ("USA Funds"), *Bible v. United Student Aid Funds*, 799 F.3d 633 (7th Cir. 2015) *reh'g denied*, 807 F.3d 839 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 1607 (2016). *Bible* was not brought under the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq.* Instead, *Bible* was a private class action, alleging common law breach of contract and a violation of Racketeer Influence and Corrupt Organizations Act, 18 U.SC. § 1961 *et seq. See Bible*, 799 F.3d at 638. The plaintiffs' claims in *Bible*, as here, turned on whether, under the Higher Education Act and its implementing regulations, USA Funds properly could assess collection costs on a defaulted borrower who had entered into a rehabilitation agreement within sixty days of receiving notice of default and had complied with that agreement. The trial court held that the collection of such costs was permitted and dismissed the plaintiffs' suit. *See Bible v. United Student Aid Funds, Inc.*, No. 1:13-cv-00575-TWP-TAB, 2014 WL 1048807 (S.D. Ind. Mar. 14, 2014).

The case then proceeded to the Seventh Circuit. On appeal, the Seventh Circuit asked the Secretary of Education, which had not participated in the trial court proceedings, to file an *amicus* brief addressing "whether and under what circumstances the . . . Act, as amended, and its regulations allow a guaranty agency participating in [FFELP] to assess collection costs against a first-time defaulted borrower who (1) timely enters into a rehabilitation agreement with the guarantor upon receiving notice that the guarantor has paid a default claim and (2) complies with that agreement." *Bible v. USA Funds, Inc.*, No. 14-cv-1806, ECF No. 34, at 2 (7th Cir. Jan. 28,

2015); *see also Bible*, 799 F.3d at 643 ("After oral argument, we invited the Secretary of Education to file an *amicus* brief addressing his interpretation of the relevant statutory framework and federal regulations.").

On August 18, 2015, the Seventh Circuit issued a divided opinion reversing the trial court's decision. The panel majority opinion was written by Judge Hamilton, who elected to "apply the Secretary['s] . . . interpretation of the applicable statutes and regulations . . . that a guaranty agency may not impose collection costs on a borrower who is in default for the first time but who has timely entered into and complied with an alternative repayment agreement." *Bible*, 799 F.3d at 639. In Judge Hamilton's view, the Secretary had put forward "the best interpretation of the statutes and regulations." *Id.* at 645. Alternatively, Judge Hamilton wrote that the Secretary's interpretation should be upheld because of the deference owed to the Secretary as the administrator of FFELP. *Id.* at 650 ("Even if the preceding analysis does not provide the best interpretation of the statutory framework and accompanying regulations, the . . . same result would still be correct based on the deference we owe to the Secretary of Education, who is tasked with administering the FFELP and issuing the implementing regulations.").

It was this alternative argument regarding deference that garnered a majority. Judge Flaum, concurring in part and concurring in the judgment, disagreed with Judge Hamilton "that the text of the regulations unambiguously supports Bible's [and the Secretary's] interpretation of the statutory and regulatory scheme." *Id.* at 661 (J. Flaum, concurring). "Instead," Judge Flaum "f[ou]nd the regulatory landscape sufficiently complex to merit deference to the agency's reasonable interpretation," *id.*, and citing the Supreme Court's decision in *Auer v. Robbins*, 519 U.S. 452 (1997), "join[ed] that portion of Judge Hamilton's analysis that relies on administrative deference," *id.* at 663. In a dissenting opinion, Judge Manion found that the implementing

6

regulations unambiguously permit "collection costs for rehabilitated loans," and, accordingly, found "the Department's interpretation . . . plainly erroneous," "inconsistent with the regulation," and "not entitled to deference." *Id.* at 674 (Manion, J., dissenting). "Moreover," Judge Manion wrote, "the Department's *amicus* brief demonstrates that its interpretation is entirely new and inconsistent with its prior interpretations." *Id.*

The parties here have expended much energy arguing whether *Bible* was decided correctly. Relatedly, they have vigorously defended their respective positions on what the Higher Education Act and its implementing regulations permit and whether the Dear Colleague Letter is arbitrary and capricious under the APA. At this stage, however, the court need not resolve the merits of those issues. Indeed, it *cannot*. At bottom, the questions of whether *Bible* was correctly decided and whether the Dear Colleague Letter violated the APA turn on the threshold question of whether the Department's interpretation constitutes a new rule. And, as the court explains below, because Plaintiff's Complaint contains well-pleaded factual allegations that, assumed to be true, would make the Dear Colleague Letter a new rule, Plaintiff has asserted a plausible claim that the Letter was arbitrary and capricious and violated the APA. The court, therefore, must deny the motion to dismiss.

\* \* \*

The Supreme Court repeatedly has emphasized that "[r]egulatory agencies do not establish rules of conduct to last forever," *Am. Trucking Ass'ns, Inc. v. Atchison, T. & S.F.R. Co.*, 387 U.S. 397, 416 (1967), and "administrative authorities must be permitted, consistently with the obligations of due process, to adapt their rules and policies to the demands of changing circumstances," *In re Permian Basin Area Rate Cases*, 390 U.S. 747, 784 (1968). *See also Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 417 (1993) ("[A]n administrative agency is not

disqualified from changing its mind") (citation and internal quotation marks omitted); *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 981 (2005) ("An initial agency interpretation is not instantly carved in stone. On the contrary, the agency . . . must consider varying interpretations and the wisdom of its policy on a continuing basis, for example, in response to changed factual circumstances." (citation and internal quotation marks omitted)).

However, if an agency does undertake an action inconsistent with past practice, it is "obligated to supply a reasoned analysis for the change." *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 42 (1983); *see also Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016) ("Agencies are free to change their existing policies as long as they provide a reasoned explanation for the change."). The "reasoned analysis" requirement does not demand that an agency "demonstrate to a court's satisfaction that the reasons for the new policy are *better* than the reasons for the old one; it suffices that the new policy is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better, which the conscious change of course adequately indicates." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009).

Two recent Supreme Court decisions inform when—as a factual matter—an agency can be deemed to have changed its past position and thus adopted a new rule. In *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156 (2012), the Supreme Court examined whether a Department of Labor interpretation of its own regulations qualified for *Auer* deference. Under *Auer*, "[a]n agency's [reasonable] interpretation of its own ambiguous regulations" is generally controlling. *MarkWest Mich. Pipeline Co. v. FERC*, 646 F.3d 30, 36 (D.C. Cir. 2011). The Court in *Christopher* declined to extend *Auer* deference to the Department of Labor's interpretation of

its regulations because the agency's position was a "surprise" deviation from its long-acquiescence to a standard industry practice:

> [D]espite the industry's decades-long practice of classifying pharmaceutical detailers as exempt employees, the [Department of Labor] never initiated any enforcement actions with respect to detailers or otherwise suggested that it thought the industry was acting unlawfully. We acknowledge that an agency's enforcement decisions are informed by a host of factors, some bearing no relation to the agency's views regarding whether a violation has occurred. *See, e.g.*, *Heckler v. Chaney*, 470 U.S. 821, 831 . . . (1985) (noting that "an agency decision not to enforce often involves a complicated balancing of a number of factors which are peculiarly within its expertise"). *But where, as here, an agency's announcement of its interpretation is preceded by a very lengthy period of conspicuous inaction, the potential for unfair surprise is acute*. . . . Accordingly, whatever the general merits of *Auer* deference, it is unwarranted here.

132 S. Ct. at 2168 (emphasis added) (footnote omitted).

More recently, in *Encino Motor Cars*, the Supreme Court again emphasized that, when an agency takes a position at odds with long-standing industry practice to which the agency has acquiesced, it has announced a new rule. In *Encino Motor Cars*, at issue was a Department of Labor regulation which interpreted the Fair Labor Standards Act to cover certain employees of auto dealerships, known as service advisors, for overtime pay. *See* 136 S. Ct. at 2121-22. For decades, the Department of Labor had taken the position that service advisors were not eligible for overtime pay. *See id.* at 2123. Then, in 2011, it changed positions, with minimal explanation, and adopted a regulation making service advisors eligible for overtime pay. *See id.* In finding that the Department of Labor had changed its position, the Court emphasized that "[t]he retail automobile and truck dealership industry had relied since 1978 on the Department's position that service advisors are exempt from the FSLA's overtime pay requirement." *Id.* at 2126. The Court noted that the dealership industry had negotiated and structured compensation plans against this background and now could face substantial FSLA liability. *See id.* The Court concluded:

9

> In light of the serious reliance interests at stake, the Department's conclusory statements do not suffice to explain its decision. This lack of reasoned explication for a regulation that is inconsistent with the Department's longstanding earlier positions results in a rule that cannot carry the force of law. It follows that this regulation does not receive *Chevron* deference in the interpretation of the relevant statute.

*Id.* at 2127 (citations omitted).

As *Christopher* and *Encino Motor Cars* make clear, two consequences flow from an agency's change in position. The first is that "the agency must at least display awareness that it is changing position and show that there are good reasons for the new policy." *Id.* at 2126 (citation and internal quotation marks omitted). Importantly, "[i]n explaining its changed position, an agency must also be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account." *Id.* (citation and internal quotation marks omitted); *see also Smiley v. Citibank (S. Dakota), N.A.*, 517 U.S. 735, 742 (1996) ("[C]hange that does not take account of legitimate reliance on prior interpretation . . . may be 'arbitrary, capricious [or] an abuse of discretion.'"). The second consequence is that, if the agency fails to acknowledge a change and adequately explain it, the changed position will be afforded no deference in litigation under either *Chevron* or *Auer*. *See Encino Motor Cars*, 136 S. Ct. at 2127; *Christopher*, 132 S. Ct. at 2168-69.

Bearing the foregoing principles in mind, the court now turns to the Complaint in this case. As to industry practice, Plaintiff has alleged that, "[i]n reliance on the [Act] and its regulations, guaranty agencies have long assessed collection costs against defaulted borrowers who enter into Rehabilitation Agreements," Compl. ¶ 34; "[t]he New Rule changes existing law, and the known and disclosed existing practices of guaranty agencies, without providing adequate notice or the opportunity to comment," *id.* ¶ 68; and "[p]ursuant to the Department's New Rule, decades of discretion by guaranty agencies . . . would be precipitously wiped away, in one fell swoop," *id.* ¶ 77.

10

As to the Department's acquiescence to industry practice, Plaintiff has pleaded that the "Department has been aware of this industry practice, has acquiesced to this practice, and has never, until now, formally announced a contrary purported interpretation of the [Act] and its regulations." *Id.* ¶ 34. Plaintiff further has averred that the "Department has, for years and years, conducted comprehensive audits of USA Funds and other guaranty agencies." *Id.* ¶ 37. According to Plaintiff, "it is common practice [during these audits] for guaranty agencies to provide . . . detailed data [that] make clear that collection costs are routinely assessed against defaulted borrowers who are making Rehabilitation Agreement payments—even against those who entered into Rehabilitation Agreements within 60 days after a default claim is paid," *id.* ¶ 38. Furthermore, guaranty agencies provide during audits "documentation of policies and internal audit procedures, which also make clear the practice of assessing collection costs upon defaulted borrowers who are in Rehabilitation Agreement status," but the "Department has never made any finding, nor taken any exception to, such practices." *Id.* ¶ 39.

Plaintiff also alleges that the Department audited Plaintiff in 2012 and 2014 and received "account samples for borrowers who entered into Rehabilitation Agreements within the first sixty days after default, and were charged collection costs," but "made no findings of discrepancies with regard to such accounts or charges." *Id.* ¶ 40. Finally, Plaintiff has alleged that it "and other guaranty agencies have reasonably relied on the Department's lack of enforcement, lack of guidance letters, and its public statements such as those on its website when interpreting their rights and obligations under the [Act] and its regulations," *id.* ¶ 45, and the "Department's New Rule is a *de facto* new regulation, which constitutes a radical break from both the text of the statute and regulations, and the practice of both guaranty agencies and of the Department," *id.* ¶ 96.

On a motion to dismiss, the court must, of course, accept the "factual allegations . . . as true," *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 67 (D.C. Cir. 2015), and "construe the complaint 'in favor of [the plaintiff] who must be granted the benefit of all inferences that can be derived from the facts alleged,'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979). Here, based on the allegations in the Complaint, the court finds that Plaintiff has sufficiently pleaded that the Dear Colleague Letter amounts to a new rule. What that means, under *Christopher* and *Encino Motor Cars*, is that the Department was required by the APA to acknowledge that it had changed its position and to provide a reasoned explanation for the change, taking into consideration the industry's reliance on the agency's prior position. Having reviewed the Dear Colleague Letter—which is the only record evidence before the court—the court concludes that Plaintiff has stated a plausible claim that the Department did not adhere to those procedural requirements. The Dear Colleague Letter arguably does not acknowledge a change in agency position; nor does it explicitly consider the industry's reliance interests that may have developed based on the agency's previous position. Accordingly, Plaintiff has stated a plausible procedural violation of the APA sufficient to withstand the motion to dismiss.

There is yet another legal consequence that flows from the Plaintiff's plausible APA claim. If the Department did not adhere to the procedural requirements of the APA in announcing its new position, its interpretation of the Higher Education Act and its implementing regulations would not be entitled to deference. And, here, the question of deference is potentially dispositive. Indeed, as *Bible* showed, it was largely because a second judge concluded that the Department was owed *Auer* deference that the Department's position garnered a two-judge majority and prevailed. As Judge Easterbrook observed in connection with the Seventh Circuit denial of *en banc* review, "this

is one of those situations in which the precise nature of deference (if any) to an agency's views may well control the outcome." *Bible v. United Student Aid Funds, Inc.*, 807 F.3d 839, 841 (7th Cir. 2015). Because the court, at this motion to dismiss stage, cannot say with certainty what level of deference, if any, would be afforded to the agency's position, the court declines to decide whether the views stated in the Dear Colleague Letter conflict with the Higher Education Act or its implementing regulations.

None of the foregoing ought to be interpreted as the court having reached a conclusion on the merits of the parties' positions. All the court has ruled at this juncture is that Plaintiff has stated a claim upon which relief can be granted. Nothing more. A final decision on the merits will have to await briefing on motions for summary judgment, which would include a review of the administrative record and any other relevant evidence. *See Vargus v. McHugh*, 87 F. Supp. 3d 298, 301 (D.D.C. 2015) ("However, when courts must determine whether the adjudicatory process was reasonable and . . . [w]hen recourse to the record is necessary, a court should have before it neither more nor less information than did the agency when it made its decision.") (citations and internal quotation marks omitted); *Zemeka v. Holder*, 963 F. Supp. 2d 22, 26 (D.D.C. 2013) (denying the agency's motion to dismiss and "requir[ing] Defendants to renew their arguments in a motion for summary judgment with citations to the administrative record."); *Swedish Am. Hosp. v. Sebelius*, 691 F. Supp. 2d 80, 89 (D.D.C. 2010) (denying agency's motion to dismiss; "[T]he plaintiff is challenging not only the administrative decision, but also the process that led to that decision. The court is unable to assess the merits of these arguments without considering the administrative record.").

\* \* \*

Finally, the court will address Defendants' argument—raised for the first time after the close of briefing on its motion to dismiss—that Plaintiff's suit must be dismissed in its entirety because the Seventh Circuit's adverse determination against USA Funds in *Bible* forecloses its re-litigation in this case. *See generally* Defs.' Suppl., ECF No. 11-2. Issue preclusion, a species of *res judicata*, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (internal quotation omitted). A party is barred from re-litigating an issue if three conditions are met:

> First, the same issue now being raised must have been contested by the parties and submitted for judicial determination in the prior case. Second, the issue must have been actually and necessarily determined by a court of competent jurisdiction in that prior case. Third, preclusion in the second case must not work a basic unfairness to the party bound by the first determination.

*Canonsburg Gen. Hosp. v. Burwell*, 807 F.3d 295, 301 (D.C. Cir. 2015) (citation omitted).

Here, Defendants' assertion of issue preclusion founders on the third element—applying the doctrine would work a basic unfairness to Plaintiff. A basic requirement of fairness is that the party against whom preclusion is sought had a full and fair opportunity to make its case in the earlier litigation. *See Jack Faucett Assocs., Inc. v. AT&T*, 744 F.2d 118, 126 (D.C. Cir. 1984) ("As a corollary to the concept that 'fairness' to the defendant must be the touchstone in offensive estoppel cases, issue preclusion cannot be invoked against a party who did not have a 'full and fair' opportunity to litigate the issue to be precluded."); *Otherson v. Dep't of Justice*, 711 F.2d 267, 272 (D.C. Cir. 1983) ("Issue preclusion is only appropriate when a party had a full and fair opportunity to present his case at a prior hearing[.]"). Plaintiff did not have such an opportunity before the Seventh Circuit for two reasons. First, the question whether the Department, in issuing the Dear Colleague Letter, fully complied with the procedural requirements of the APA was not

14

before the court in *Bible*. Plaintiff's Complaint in this case squarely presents that question. *See* Compl., Counts 3 and 4, at 27-28.

Second, Plaintiff did not have a full and fair opportunity in *Bible* to show that the Department's views were not entitled to *Auer* deference. In *Bible*, the question of *Auer* deference arose for the first time on appeal only after the Seventh Circuit invited the Department to file an *amicus brief*. Plaintiff did have *some* opportunity to, and did, assert that the Department was not entitled to deference because the Dear Colleague Letter announced a change in position without following the requirements of the APA. *Compare Bible*, 799 F.3d at 651 (concluding that "[t]here is no indication *from the record* that the Secretary has ever taken a contrary position") (emphasis added), *with id.* at 674 (concluding that "the Department's amicus brief demonstrates that its interpretation is entirely new and inconsistent with its prior interpretations" and disagreeing that *Auer* deference applies) (Manion, J., concurring in part and dissenting in part).

That opportunity, however, was not "full and fair." Unlike on appeal in *Bible*, Plaintiff in this case will have the benefit of the administrative record. It also will have the opportunity to show, as a factual matter, that the industry had an established practice of assessing costs on borrowers who successfully rehabilitated their defaulted loans and that the Department was aware of and acquiesced to the practice. Plaintiff did not have a full and fair opportunity to make such a factual showing for the first time on appeal in *Bible*. Accordingly, the court rejects Defendants' motion to dismiss on the ground of issue preclusion.

* * *

For the foregoing reasons, the court denies Defendants' Motion to Dismiss. Additionally, the court grants Defendants' Motion for Leave to File Supplement to Motion to Dismiss,

ECF No. 11-2, and denies their Motion for Reconsideration of June 7, 2016 Minute Order, ECF No. 12, which directed the parties to file a joint appendix of the administrative record.

Dated: August 5, 2016

Amit P. Mehta
United States District Judge