# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STUDENT AID FUNDS, INC.,** | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 15-cv-01137 (APM) |
| **BETSY DEVOS,** Secretary of the U.S. Department of Education, et al., | ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

In this action, Plaintiff United Student Aid Funds, Inc., challenges a "Dear Colleague Letter" issued by the United States Department of Education ("DOE").[1] That Letter bars "guaranty agencies," like Plaintiff, from assessing costs on student-loan borrowers who agree to a loan rehabilitation plan within 60 days of receiving a notice from the guaranty agency. DOE initially moved to dismiss the Complaint instead of moving for summary judgment, even though Plaintiff's challenge arises under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. The court denied DOE's motion, ruling that Plaintiff "stated a plausible procedural violation of the APA sufficient to withstand the motion to dismiss." *See United Student Aid Funds, Inc. v. King*, No. 15-01137, 2016 WL 4179849, at *6 (D.D.C. Aug. 5, 2016). The court, however, declined to reach the merits of the parties' substantive dispute over whether DOE's interpretation of appropriate assessment of costs, as set forth in the Dear Colleague Letter, violates the Higher Education Act of 1965, 20 U.S.C. § 1001 et seq., and its implementing regulations. *See United Student Aid Funds*,

---

[1] The court has substituted the current Secretary of Education, Betsy DeVos, as a defendant for former Secretary of Education, John B. King. *See* Fed. R. Civ. P. 25(d). The Department of Education itself also is a named defendant.

2016 WL 4179849, at *6. The court deferred ruling on that question because it could not, "at this motion to dismiss stage, . . . say with certainty what level of deference, if any, would be afforded to the agency's position." *Id.* That legal determination, the court explained, could not be resolved without first answering the "*factual* question" of whether the Dear Colleague Letter announced a new rule and, if so, complied with the APA's procedures for doing so. *See id.* at *2, *4–5. The court continued: "That factual question can be resolved only on a motion for summary judgment, after the parties have presented the administrative record and *any additional facts*." *Id.* at *2 (emphasis added).

Plaintiff now moves the court to receive "additional facts." Plaintiff has filed a Motion for Consideration of Extra-Record Evidence, which seeks to establish facts, through 15 sworn declarations not contained in the administrative record, that Plaintiff contends are relevant to proving its APA claims. *See* Pl.'s Mot. for Consideration of Extra-Record Evid., ECF No. 24 [hereinafter Pl.'s Mot.]. Most significantly, Plaintiff seeks to introduce the declarations to show that: (1) the longstanding practice of the guaranty agency industry has been, contrary to the position taken in DOE's Dear Colleague Letter, to assess costs on defaulted borrowers who entered into rehabilitation agreements within 60 days; (2) DOE acquiesced in that long-standing practice by, among other things, neither initiating any enforcement proceedings nor noticing any violations against any guaranty agency that engaged in that practice; and (3) guaranty agencies relied on DOE's inaction when deciding to assess such costs. *See id.* at 5. DOE opposes Plaintiff's Motion. Defs.' Opp'n to Pl.'s Mot., ECF No. 25 [hereinafter Defs.' Opp'n].

I

"[I]t is black-letter administrative law that in an APA case, a reviewing court should have before it neither more nor less information than did the agency when it made its decision." *Hill*

*Dermaceuticals, Inc. v. Food & Drug Admin.*, 709 F.3d 44, 47 (D.C. Cir. 2013) (per curiam) (internal quotation marks omitted). The exceptions to this rule "are quite narrow and rarely invoked." *CTS Corp. v. Envtl. Prot. Agency*, 759 F.3d 52, 64 (D.C. Cir. 2014). Over the years, the D.C. Circuit has articulated these exceptions in various ways. In *Esch v. Yeutter*, the court observed that the principle of limiting review to the administrative record "exerts its maximum force when the substantive soundness of the agency's decision is under scrutiny." 876 F.2d 976, 991 (D.C. Cir. 1989). Yet, when "the procedural validity of the [agency's] action also remains in serious question[,] . . . . it may sometimes be appropriate to resort to extra-record information to enable judicial review to become effective." *Id.* In *Esch*, the court identified no less than eight instances in which the consideration of extra-record evidence might be appropriate. *Id.*[2]

Since *Esch*, however, the D.C. Circuit has construed the exceptions to the black-letter rule more narrowly. In *IMS, P.C. v. Alvarez*, decided eight years after *Esch*, the Circuit halved the number of instances when courts could consider extra-record evidence: where the agency (1) "failed to examine all relevant factors;" (2) failed "to adequately explain its grounds for decision;" (3) "acted in bad faith;" or (4) "engaged in improper behavior in reaching its decision." 129 F.3d 618, 624 (D.C. Cir. 1997). Twelve years after that, in *City of Dania Beach v. Federal Aviation*

---

[2] The Circuit outlined the following instances when review of materials outside the administrative record would be appropriate:

> (1) when agency action is not adequately explained in the record before the court; (2) when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence which it failed to include in the record; (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly; (5) in cases where evidence arising after the agency action shows whether the decision was correct or not; (6) in cases where agencies are sued for a failure to take action; (7) in cases arising under the National Environmental Policy Act; and (8) in cases where relief is at issue, especially at the preliminary injunction stage.

*Esch*, 876 F.2d at 991.

*Administration*, the D.C. Circuit recognized one less exception than it had in *IMS*: "(1) if the agency deliberately or negligently excluded documents that may have been adverse to its decision; (2) if background information was needed to determine whether the agency considered all the relevant factors, or (3) if the agency failed to explain administrative action so as to frustrate judicial review." 628 F.3d 581, 590 (D.C. Cir. 2011) (internal quotation marks omitted).

The D.C. Circuit's trend towards limiting the circumstances in which district courts may consider evidence outside the administrative record has continued in recent years. In 2013, the Circuit re-affirmed that "district courts may consult extra-record evidence when 'the procedural validity of the [agency's] action . . . remains in serious question," *Hill Dermaceuticals*, 709 F.3d at 47 (alterations in original) (quoting *Esch*, 876 F.2d at 991), but indicated the exception can be relied upon, "at most[,] . . . to challenge *gross* procedural deficiencies—such as where the administrative record itself is so deficient as to preclude effective review," *id.* (emphasis added) (citing *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 514 (D.C. Cir. 2010)). Then, just two years ago in *CTS Corp. v. Environmental Protection Agency*, the Circuit confirmed that the "[e]xceptions to th[e] rule . . . . are primarily limited to cases where 'the procedural validity of the agency's action remains in serious question,' or the agency affirmatively excluded relevant evidence." 759 F.3d at 64 (citation omitted) (quoting *Esch*, 876 F.2d at 991).

Thus, although the number of situations in which extra-record evidence may be considered has dwindled over time, the D.C. Circuit has consistently stated that where the district court cannot determine from the administrative record whether the agency complied with its procedural obligations, the district court may consider extra-record evidence. *Compare Esch*, 876 F.2d at 991, *with CTS Corp.*, 759 F.3d at 64.

II

With these principles in mind, the court now turns to Plaintiff's Motion. Plaintiff argues that the court should consider its extra-record declarations because, in adopting the Dear Colleague Letter, DOE failed to examine all relevant factors and did not adequately explain its actions. Pl.'s Mot. at 10–11. Plaintiff also asserts that extra-record evidence is needed for effective judicial review. *Id.* at 11. At bottom, Plaintiff's contends that the court should review evidence outside the four corners of the administrative record because "the procedural validity of the [agency's] action remains in serious question." *See Esch*, 876 F.2d at 991. The court agrees and will permit Plaintiff to add its 15 declarations to the record.

This is indeed the rare APA case in which a plaintiff may supplement the administrative record because the court cannot, on the administrative record alone, determine whether DOE has complied with its procedural obligations under the APA or whether DOE's Dear Colleague Letter substantively conflicts with the Higher Education Act and its implementing regulations.

As the court explained when denying Defendant's Motion to Dismiss, the initial pleadings present an unresolved factual issue as to whether the Dear Colleague Letter announced a "new rule" consistent with the APA. *United Student Aid Funds*, 2016 WL 4179849, at *2, *4. The administrative record, on its own, however, is not sufficient to resolve this issue. If the Dear Colleague Letter is a "new rule"—that is, an action inconsistent with DOE's past practice—then DOE was statutorily required to "supply a reasoned analysis for the change" in its position. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983). Although an agency need not show that its reasons for the new position are better than its reasons for the old one, *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009), it "must at least display awareness that it is changing position and show that there are good reasons for the new policy," *Encino Motorcars,*

*LLC v. Navarro*, 579 U.S. ___, ___, 136 S. Ct. 2117, 2126 (2016) (internal quotation marks omitted). Importantly, "[i]n explaining its changed position, an agency must also be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account." *Id.* (internal quotation marks omitted); *see also Smiley v. Citibank (S. Dakota), N.A.*, 517 U.S. 735, 742 (1996) ("[C]hange that does not take account of legitimate reliance on prior interpretation . . . may be 'arbitrary, capricious [or] an abuse of discretion.'" (third alteration in original) (citations omitted) (quoting 5 U.S.C. § 706(2)(A)).

The administrative record in this case sheds no light on two factual issues central to resolving whether the Dear Colleague Letter announced a "new rule" in a manner that satisfies the APA. First, the administrative record is silent about the existing industry practice at the time DOE issued its Letter. Without evidence of industry practice, the court cannot determine, as a factual matter, whether the Dear Colleague Letter constituted the type of change in position that produced "unfair surprise" within the industry against which the Supreme Court has warned.[3] *See Christopher v. SmithKline Beecham Corp.*, 567 U.S. ___, ___, 132 S. Ct. 2156, 2167 (2012). Second, the record also is silent about whether the industry relied on DOE's prior actions or inaction. If, as Plaintiff posits, the industry relied on DOE's acquiescence in its cost-assessment practices, then the Dear Colleague Letter might constitute a change in position that required DOE to take the industry's reliance interests into account. *See Encino Motorcars*, 136 S. Ct. at 2127.[4]

---

[3] Although DOE argues that the plain language of the Higher Education Act and implementing regulations are so clear that the Dear Colleague Letter could not have resulted in unfair surprise, *see* Defs.' Opp'n at 6, that position is belied by the split panel decision in *Bible v. United Student Aid Funds*, 799 F.3d 633, *reh'g en banc denied*, 807 F.3d 839 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 1607 (2016), and Judge Easterbrook's concurring opinion in denying rehearing en banc, *see* 807 F.3d at 841 ("The [different] positions taken by the three members of the panel show that this is one of those situations in which the precise nature of deference (if any) to an agency's views may well control the outcome.").

[4] That the administrative record contains no evidence about industry practice and reliance perhaps is not surprising. Because no period for notice and comment preceded DOE's amicus brief in *Bible*, 799 F.3d 633, or the Dear Colleague Letter, this litigation presents the first real opportunity for a guaranty agency to offer such relevant evidence.

Furthermore, without knowing whether DOE's Dear Colleague Letter is a "new rule" whose genesis has been adequately explained, the court is unable to determine what level of deference to afford the Letter. Plaintiff asks the court to assess not only whether DOE violated its procedural obligations under the APA by issuing its Dear Colleague Letter, but also whether DOE's Letter substantively conflicts with the Higher Education Act and its implementing regulations. *See* Compl., ECF No. 1. It is established administrative law that "if the agency fails to acknowledge a change [in its position] and adequately explain it, the changed position will be afforded no deference in litigation under either *Chevron* [*U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)] or *Auer* [*v. Robbins*, 519 U.S. 452 (1997)]." *United Student Aid Funds*, 2016 WL 4179849, at *5 (citing *Encino Motorcars*, 136 S. Ct. at 2127; *Christopher*, 132 S. Ct. at 2168–69).

In short, the overall lack of industry-focused evidence in the administrative record constitutes a "gross procedural deficiency" that precludes effective review of Plaintiff's APA claims and thus warrants admission of extra-record evidence. *Hill Dermaceuticals*, 709 F.3d at 47. The 15 extra-record declarations that Plaintiff offers are relevant because the procedural validity of DOE's action "remains in serious question" even after submission of the administrative record. *See Esch*, 876 F.2d at 991. So, too, does the degree of deference, if any, the court should afford the agency's interpretation of the Higher Education Act and its implementing regulations. Absent admission of the extra-record evidence, the court cannot decide whether the Dear Colleague Letter at issue violates the APA.

III

DOE presents a host of objections to the court's consideration of extra-record evidence. None are convincing.

First, DOE contends that it "reasonably determined that in the Dear Colleague Letter the agency was restating and clarifying the existing rules," and, therefore, resort to extra-record evidence is unnecessary to determine whether the Letter announced a new rule in a manner suitable under the APA. *See* Defs.' Opp'n at 5–6. DOE takes its argument a step further and asserts that its classification of the Letter "should be upheld so long as it was not arbitrary or capricious." *See id.* at 5. The court is aware of no authority for that proposition, and DOE cites none. Whether an agency's interpretative statement is a mere clarification of its existing position, as opposed to a change in position, is a question for the court to decide—not DOE—and the court owes the agency no deference on that issue.

Next, DOE argues that the courts should disregard Plaintiff's proffered extra-record evidence because "[i]t is obviously to the financial advantage of guaranty agencies to interpret [the Department of] Education's regulations to allow them to charge as much interest or fees to borrowers as they can so long as their practices remain unchallenged by borrowers or Education, both of whom have limited enforcement resources." *See id.* at 7–8. This argument is perplexing. It is unclear how impugning the industry's profit motives resolves whether the administrative record is a sufficient basis on which to assess whether DOE complied with its obligations under the APA. The industry's profit motives are entirely irrelevant to the court's assessment of whether DOE issued a new rule. DOE's explanation for its lack of enforcement activity—the absence of sufficient resources—is equally irrelevant to whether the administrative record presents enough evidence for the court to determine whether DOE complied with the APA. When the agency does

act, what matters for purposes of the APA is whether its action unfairly surprises the industry. *See Christopher*, 132 S. Ct. at 2168. The court cannot make that determination on the present record.

DOE also takes issue with the weight that should be accorded certain extra-record evidence Plaintiff submits. Specifically, DOE argues that an e-mail from a DOE employee to a guaranty agency and certain published audit guidelines—both of which suggest DOE allowed cost assessments in the past—do not support a conclusion that DOE violated the APA because neither is an official agency interpretation. *See* Defs.' Opp'n at 7–8. DOE may be right; it may be that DOE's official interpretations must prevail over its more informal pronouncements. But, DOE's argument about the weight of the extra-record evidence again goes to the merits of Plaintiff's claims, not whether the court should consider such evidence in the first place.

Finally, the agency argues that the court should not consider Plaintiff's extra-record evidence because doing so would set an unreasonably burdensome precedent of requiring agencies "to gauge the practices and expectations of an industry every time the agency decides that it should restate and clarify its rules." Defs.' Opp'n at 11. That argument dramatically overstates the impact of this court's ruling. Consideration of extra-record evidence under the present circumstances imposes no greater burden on agencies than what the Supreme Court already has demanded of them—consideration of existing industry practice and reliance interests. *See, e.g.*, *Encino Motorcars*, 136 S. Ct. 2117; *Christopher*, 132 S. Ct. 2156. By considering Plaintiff's extra-record evidence, the court is doing precisely the same.

IV

For the foregoing reasons, Plaintiff's Motion for Consideration of Extra-Record Evidence is granted. Consistent with the court's Minute Order of October 12, 2016, the parties shall meet

and confer and propose a summary judgment briefing schedule in a Joint Status Report filed within seven days of this date.

Additionally, as part of the parties' Joint Status Report, DOE shall notify the court whether, in light of the change in Administrations, it will continue to adhere to the interpretation of the Higher Education Act and its implementing regulations set forth in the Dear Colleague Letter.

Dated: February 23, 2017

Amit P. Mehta
United States District Judge